JUDGE CASTEL

**11 CIV 5679**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAN DYSON,

                Plaintiff,

– against –

CITY OF NEW YORK and "JOHN DOES 1-10," Individually, and in Their Capacities as Police Officers or Other Police Personnel Whose Names Are Not Yet Known,

                Defendants.

---

Civil Action No.:

RECEIVED AUG 18 2011 U.S.D.C. S.D.N.Y. CASHIERS

**VERIFIED COMPLAINT**

**JURY DEMANDED**

Plaintiff Sean Dyson, by his attorneys, The Law Office of Mark A. Marino, PLLC, for his Verified Complaint against the defendants, alleges as follows, upon personal knowledge and upon information and belief:

### NATURE OF THE ACTION

1. On August 19, 2010, near East 100th Street and 3rd Avenue, six police officers took turns punching, kicking, and even standing on Sean Dyson, the plaintiff, who was already handcuffed and lying face-first on the concrete sidewalk. After they finished, the police officers started laughing and celebrating – even giving each other high-fives (the "Incident"). Even worse, the Incident occurred after Mr. Dyson flagged down an officer to ask for help.

2. Mr. Dyson, who has little recollection of the Incident, suffered a fractured skull and ruptured eardrum. Testing has revealed a Traumatic Brain Injury. He suffered neurological damage and has endured constant ringing in his ears for the past year, with no end in sight. Sean Dyson, a college student, is now undergoing testing to see if he has lost cognitive functioning.

3. Sean Dyson brings this action against the City of New York and each of the offending police officers for physical and psychological injuries, past and future medical

expenses, and lost future wages (effect on his career) arising out of the assault, battery, use of excessive force, and various violations of his civil rights.

## PARTIES

4. Plaintiff Sean Dyson ("Plaintiff") is, and was at the time of the Incident, a resident of Nassau County, State of New York.

5. Defendant City of New York is, and was at the time of the Incident, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

6. Defendant John Does 1-10, both Individually and in Their Capacities as Police Officers or Other Police Personnel Whose Names Are Not Yet Known ("John Does," collectively, or "John Doe #___," individually) are police officers or other police personnel who participated in or watched the Incident, along with those who were with Plaintiff during the hours subsequent to the Incident at Metropolitan Hospital. John Does' actual names are not yet known to Plaintiff, but Plaintiff expects to learn their names during the course of litigation.

7. Defendant City of New York, at all times relevant to the action, employed John Does in connection with its control, operation, and maintenance of the New York City Police Department (the "NYPD"). John Does took the actions described below under color of state law.

8. John Does took the actions described below within the scope of their employment by Defendant City of New York.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the instant action, pursuant to 28 U.S.C. §§ 1331 and 1343, as this is a civil action asserting claims under the federal civil rights laws.

10. This Court has supplemental jurisdiction over the claims asserted under New York state law, pursuant to 28 U.S.C. §1367, as these claims are so related to Plaintiff's claims under the federal civil rights laws that they form part of the same case or controversy.

11. Venue is proper, pursuant to 28 U.S.C. §1391, as the events and transactions giving rise to Plaintiff's claims occurred within this district.

## PROCEDURAL REQUIREMENTS

12. Plaintiff has complied with New York's General Municipal Law §50 and satisfied all requirements necessary to commence this lawsuit against Defendants.

13. On August 19, 2010, the unlawful actions of Defendants caused Plaintiff to sustain the serious injuries set forth below, along with diminished future wages and past and future medical expenses.

14. On November 4, 2010, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, or its agent(s), on behalf of Plaintiff.

15. On January 18, 2011, Plaintiff appeared for, and testified at, a hearing pursuant to New York's General Municipal Law §50(h) at the request of Defendant City of New York.

16. Defendant City of New York, and/or its agent(s), has refused or neglected to make any adjustment or payment on Plaintiff's claims (as stated in Plaintiff's Notice of Claim).

17. Plaintiff commences this action within one year and ninety days of the date of accrual of the instant action.

## FACTUAL ALLEGATIONS

18. Due to the extreme nature of his injuries, Plaintiff's recollection of the Incident is hazy, but eyewitnesses to the Incident provide great clarity to the events of that day.

19. None of the eyewitnesses to the Incident had ever seen Plaintiff before the Incident, and none have seen him since.

20. According to eyewitness testimony, at approximately 3:00 p.m. on August 19, 2010, Plaintiff was headed east on 100th Street going toward 3rd Avenue. He was walking quickly and frequently looking back over his shoulder, as if he was afraid of something. Plaintiff was not injured at this time.

21. Upon information and belief, Plaintiff had just come from a confrontation in which he was menaced – but he was not injured – by a man holding a baseball bat.

22. Plaintiff flagged down a four wheel vehicle from the Central Park Police Precinct (the "CPP") to get help.

23. The police officer from the CPP vehicle ("John Doe #1") got out and approached Plaintiff. Rather than assisting Plaintiff, John Doe #1 patted him down. Plaintiff, confused as to why John Doe #1 was patting him down instead of responding to his request for help, asked: "Why are you searching me? I stopped you."

24. John Doe #1 was joined by two police officers from the 23rd Precinct, which is just two short blocks away – at East 102nd Street and 3rd Avenue ("John Does #2-3").

25. John Doe #1 snatched Plaintiff's backpack and searched it. As he was giving it back, Plaintiff grabbed it and instantly lowered his hands, at which point John Doe #1 unexpectedly hit Plaintiff in the face, knocking him backwards.

26. Plaintiff was forced down to the concrete sidewalk, face-first, and John Doe #1 handcuffed him. Plaintiff did not resist the arrest and even told the officers: "I'm not resisting."

27. At that point, John Doe #2 went over and dropped his knee on the side of Plaintiff's head while he was handcuffed on the concrete sidewalk.

28. Five more police officers from the 23rd Precinct came to the scene. There were now eight officers present.

29. Six of the eight police officers ("John Does #1-6") began punching and kicking Plaintiff in the side and in the head, and one even stood on Plaintiff's back.

30. The beating lasted a full ten seconds, during which time the two "non-participating" officers stood there and watched ("John Does #7-8").

31. One eyewitness was yelling at the John Does from the apartment building directly in front of the Incident: "He's already cuffed! What are you guys doing?"

32. At some point, Plaintiff lay motionless. One or two John Does picked up Plaintiff – by the handcuffs, not by the arms – and put him into an ambulance.

33. While Plaintiff was in the ambulance, unconscious, the John Does were laughing and congratulating each other with high-fives.

34. When a "white shirt officer" – rank of lieutenant or higher – walked up to the scene, the John Does immediately started leaving, one by one, until the block was empty.

35. Plaintiff, who does not recall ever being in the ambulance, arrived at Metropolitan Hospital ("Metropolitan") between 3:30 p.m. and 4:00 p.m.

36. Two more officers from the 23rd Precinct ("John Does #9-10") accompanied Plaintiff into Metropolitan and handcuffed him to a chair with blood coming from his left ear, bleeding, bruised, and cut wrists, and bruises all over his body.

37. Plaintiff asked John Does #9-10 several times if he could clean himself off in the bathroom, but they ignored him. Plaintiff also informed John Does #9-10 three times over the course of almost five hours that his wrists hurt and showed them the obvious cuts and bruises on both wrists, but the officers ignored those complaints as well.

38. Before the nurse came to see Plaintiff, John Doe #9 told Plaintiff that his injuries resulted from being beaten by the man with the baseball bat that, upon information and belief, Plaintiff had encountered prior to the Incident.

39. Due to the extreme nature of his injuries, Plaintiff had no independent recollection of their origin. Because he innocently believed at the time that John Doe #9 would have no reason to lie to him about the cause of his injuries, Plaintiff relayed John Doe #9's untruthful explanation for his injuries to the nurse at Metropolitan. John Does #9-10 were both present but did not speak up and correct him.

40. In reality, however, unbeknownst to Plaintiff at the time and as confirmed by multiple eyewitnesses, Plaintiff's injuries were caused by the police, not a man with a baseball bat. Indeed, Plaintiff exhibited no injuries when he sought assistance from John Doe #1.

41. After tests at Metropolitan revealed that Plaintiff suffered a fractured skull and ruptured left eardrum, a doctor recommended a transfer to Bellevue Hospital ("Bellevue") because Metropolitan does not have a neurology department.

42. Realizing that he had been handcuffed to a chair for at least five hours in a hospital without a neurology department and surrounded by officers who would not let him wash the dried blood off his body, Plaintiff saw that a transfer to Bellevue under police supervision would likely be futile. Accordingly, he "refused medical treatment," opting to wait it out at the 23rd Precinct and go to the hospital on his own after his arraignment.

43. Plaintiff was transported from the 23rd Precinct to Central Booking the following morning to be arraigned. Upon seeing Plaintiff, the EMT at Central Booking asked, "How are you standing?" The EMT ordered the police officers to take Plaintiff to Bellevue.

44. Relying on John Doe #9's false story, Plaintiff told the nurse at Bellevue that his injuries were caused by a man with a baseball bat. Once again, none of the police officers spoke up and admitted the true source of Plaintiff's injuries.

45. The medical personnel at Bellevue confirmed that Plaintiff had a fractured skull and "tympanic trauma."

46. Plaintiff was later charged with resisting arrest and breaking a window earlier that day. He was not convicted of these charges and, upon information and belief, the charges have been dropped.

47. Plaintiff is a student at SUNY College at Old Westbury.

48. During the fall semester, just after the Incident, Plaintiff took four classes. He did not complete three of the classes and failed his remaining class.

49. Plaintiff was set to graduate after the spring semester and now hopes to graduate this December.

50. One year later, Plaintiff still suffers from pain in his wrists, constantly shaking/tremulous hands, constant ringing in his ear, and pressure leading to daily headaches.

51. Plaintiff has a Traumatic Brain Injury, according to recent testing. Whether he has lost cognitive functioning is yet to be determined.

52. Plaintiff is set to undergo more neurological and auditory tests to determine the full extent of the damage.