UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SEAN DYSON,

                Plaintiff,

– against –

CITY OF NEW YORK, DETECTIVE NATACHA HUERTA, POLICE OFFICER CARL ACHILLES, POLICE OFFICER ALBERT JANKOWSKI, POLICE OFFICER DANIEL LAMPERT, POLICE OFFICER LUIS PAGAN, POLICE OFFICER LEONARDO MUNOZ, and "JOHN DOES 1-4," Individually, and in Their Capacities as Police Officers, Detectives, Peace Officers, or Other Police Personnel Whose Names Are Not Yet Known,

                Defendants.

Civil Action No.: 11-CV-5679 (PKC)

**AMENDED VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**



---

Plaintiff Sean Dyson, by his attorneys, Mark A. Marino, PC, for his Amended Verified Complaint against Defendants, alleges as follows, upon personal knowledge and further upon information and belief:

## NATURE OF THE ACTION

1. On August 19, 2010, near East 100th Street and 3rd Avenue, six police officers took turns punching, kicking, and even standing on Sean Dyson, the plaintiff, who was already handcuffed and lying face-first on the concrete sidewalk. After they finished, the police officers started laughing and celebrating – even giving each other high-fives (the "Incident"). Even worse, the Incident occurred after Mr. Dyson flagged down an officer to ask for help.

2. Mr. Dyson, who has little recollection of the Incident, suffered a fractured skull and ruptured eardrum. Testing has revealed a Traumatic Brain Injury. He suffered neurological damage and has endured constant ringing in his ears for the past eighteen months, with no end in sight. Mr. Dyson is undergoing tests to see if he lost cognitive functioning.

3. Sean Dyson brings this action against the City of New York and the offending police officers for physical and psychological injuries, past and future medical expenses, and lost future wages (effect on his career) arising out of the assault, battery, use of excessive force, and various violations of his civil rights occurring both during and after the Incident.

**PARTIES**

4. Plaintiff Sean Dyson ("Plaintiff") was, at the time of the Incident, a resident of Nassau County, State of New York.

5. Defendant City of New York is, and was at the time of the Incident, a municipal corporation duly organized under, and existing by virtue of, the laws of the State of New York.

6. Defendant Detective Natacha Huerta ("Detective Huerta"), Shield No. 03982, was, at the time of the Incident, a detective based out of the New York City Police Department's (the "NYPD") 23rd Precinct, located at 162 East 102nd Street, New York, New York 10029 (the "23rd Precinct"), and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action, Defendant Detective Huerta was acting within the scope of her official duties/employment and under color of state law.

7. Defendant Police Officer Carl Achilles ("Officer Achilles"), Shield No. 04262, was, at the time of the Incident, a police officer based out of the 23rd Precinct, and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action, Defendant Officer Achilles was acting within the scope of his official duties/employment and under color of state law.

8. Defendant Police Officer Albert Jankowski ("Officer Jankowski"), Shield No. 29918, was, at the time of the Incident, a police officer based out of the 23rd Precinct, and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action,

Defendant Officer Jankowski was acting within the scope of his official duties/employment and under color of state law.

9. Defendant Police Officer Daniel Lampert ("Officer Lampert"), Shield No. 24402, was, at the time of the Incident, a police officer based out of the 23rd Precinct, and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action, Defendant Officer Lampert was acting within the scope of his official duties/employment and under color of state law.

10. Defendant Police Officer Luis Pagan ("Officer Pagan"), Shield No. 22268, was, at the time of the Incident, a police officer based out of the 23rd Precinct, and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action, Defendant Officer Pagan was acting within the scope of his official duties/employment and under color of state law.

11. Defendant Police Officer Leonardo Munoz ("Officer Munoz"), Shield No. 13391, was, at the time of the Incident, a police officer based out of the 23rd Precinct, and thus employed by the NYPD and/or Defendant City of New York. At all times relevant to this action, Defendant Officer Munoz was acting within the scope of his official duties/employment and under color of state law.

12. Defendant John Does 1-4, Individually, and in Their Capacities as Police Officers, Detectives, Peace Officers, or Other Police Personnel Whose Names Are Not Yet Known ("John Does," collectively, or "John Doe #___," individually), are yet unknown police officers, detectives, peace officers, or other police personnel who actively participated in the Incident, passively watched the Incident, and/or were with Plaintiff during the relevant period subsequent to the Incident, which includes the time period starting with Plaintiff's removal from the scene of

the Incident in an ambulance to his release to Central Booking the following day. Plaintiff expects to learn Defendant John Does' actual names during the course of litigation.

13. Defendant John Doe #1 was, at the time of the Incident, employed by the NYPD and/or Defendant City of New York, but upon information and belief, Defendant John Doe #1 was not based out of the 23rd Precinct. At all times relevant to this action, Defendant John Doe #1 was acting within the scope of his official duties/employment and under color of state law. Upon information and belief, Defendant John Doe #1 is a Caucasian male.

14. Defendant John Does #2-4 were, at the time of the Incident, employed by the NYPD and/or Defendant City of New York and based out of the 23rd Precinct. At all times relevant to this action, Defendant John Does #2-4 were acting within the scope of their official duties/employment and under color of state law.

15. Defendants Detective Huerta, Officer Achilles, Officer Jankowski, Officer Lampert, Officer Pagan, Officer Munoz, and Defendant John Does will be referred to herein, collectively, as the "Individual Defendants."

16. The Individual Defendants present at any and all relevant times before and during the Incident will be referred to herein, collectively, as the "Incident Defendants." Defendants Detective Huerta, Officer Achilles, Officer Jankowski, Officer Lampert, Officer Pagan, Officer Munoz, and John Doe #1 are among the Incident Defendants.

17. The Individual Defendants who made physical contact with Plaintiff during the Incident will be referred to herein, collectively, as the "Participating Defendants."

18. The Individual Defendants present with Plaintiff at any and all times after the Incident, which includes the time period starting with Plaintiff's removal from the scene of the Incident in an ambulance to his eventual release to Central Booking the following day, will be

4

referred to herein, collectively, as the "Hospital Defendants." Upon information and belief, Defendant Officer Pagan is among the Hospital Defendants.

19. Defendant City of New York, at all times relevant to the action, employed the Individual Defendants in connection with its control, operation, and maintenance of the NYPD.

20. The Individual Defendants took the actions described below within the scope of their employment by Defendant City of New York and under color of state law.

## JURISDICTION AND VENUE

21. This Court has original jurisdiction over the instant action, pursuant to 28 U.S.C. §§ 1331 and 1343, as this is a civil action asserting claims under the federal civil rights laws.

22. This Court has supplemental jurisdiction over the claims asserted under New York state law, pursuant to 28 U.S.C. §1367, as these claims are so related to Plaintiff's claims under the federal civil rights laws that they form part of the same case or controversy.

23. Venue is proper, pursuant to 28 U.S.C. §1391, as the events and transactions giving rise to Plaintiff's claims occurred within this district.

## PROCEDURAL REQUIREMENTS

24. Plaintiff has complied with New York's General Municipal Law §50 and satisfied all requirements necessary to commence this lawsuit against Defendants.

25. On August 19, 2010, the unlawful actions of Defendants caused Plaintiff to sustain the serious injuries set forth below, along with diminished future wages and past and future medical expenses.

26. On November 4, 2010, within ninety days after the accrual of the instant action, a satisfactory Notice of Claim was filed with Defendant City of New York, or its agent(s), on behalf of Plaintiff.

27. On January 18, 2011, Plaintiff appeared for, and testified at, a hearing pursuant to New York's General Municipal Law §50(h) at the request of Defendant City of New York.

28. Defendant City of New York, and/or its agent(s), has refused or neglected to make any adjustment or payment on Plaintiff's claims (as stated in Plaintiff's Notice of Claim).

29. Plaintiff commenced this action on August 18, 2011, within one year and ninety days of the date of accrual of the instant action.

## FACTUAL ALLEGATIONS

30. Due to the extreme nature of his injuries, Plaintiff's recollection of the Incident is hazy, but eyewitnesses to the Incident provide great clarity regarding the events of that day.

31. None of the eyewitnesses to the Incident had ever seen Plaintiff before the Incident, and none have seen him since.

32. According to eyewitness testimony, at approximately 3:00 p.m. on August 19, 2010, Plaintiff was headed east on 100th Street going toward 3rd Avenue. He was walking quickly and frequently looking back over his shoulder. Plaintiff was not injured at this time.

33. Upon information and belief, Plaintiff had just come from a confrontation in which he was menaced – but he was not injured – by a man holding a baseball bat.

34. Plaintiff flagged down a four wheel vehicle from, upon information and belief, the Central Park Police Precinct (the "CPP") to get help.

35. The police officer from the CPP vehicle ("John Doe #1") got out and approached Plaintiff. Rather than assisting Plaintiff, John Doe #1 patted him down. Plaintiff, confused as to why John Doe #1 was patting him down instead of responding to his request for help, asked: "Why are you searching me? I stopped you."

36. John Doe #1 was joined by two other Incident Defendants from the 23rd Precinct, which is just two short blocks away – at East 102nd Street and 3rd Avenue.

37. John Doe #1 snatched Plaintiff's backpack and searched it. As he was giving it back, Plaintiff grabbed it and instantly lowered his hands, at which point John Doe #1 unexpectedly hit Plaintiff in the face, knocking him backwards.

38. Plaintiff was forced down to the concrete sidewalk, face-first, and John Doe #1 handcuffed him. Plaintiff did not resist the arrest and even told the officers: "I'm not resisting."

39. At that point, one of the Participating Defendants went over and dropped his knee on the side of Plaintiff's head while he was handcuffed on the concrete sidewalk.

40. Five more police officers from the 23rd Precinct came to the scene. There were now eight officers present.

41. Six of the eight police officers, the Participating Defendants, began punching and kicking Plaintiff in the side and in the head, and one even stood on Plaintiff's back.

42. The beating lasted a full ten seconds, during which time the two "non-participating" officers stood there and watched.

43. One eyewitness was yelling at the Participating Defendants from the apartment building directly in front of the Incident: "He's already cuffed! What are you guys doing?"

44. At some point, Plaintiff lay motionless. One or two Incident Defendants picked up Plaintiff – by the handcuffs, not by the arms – and put him into an ambulance.

45. While Plaintiff was in the ambulance, unconscious, certain Incident Defendants were laughing and congratulating each other with high-fives.

46. When a "white shirt officer" – rank of sergeant or higher – walked up to the scene, the Incident Defendants immediately started leaving, one by one, until the block was empty. Upon information and belief, this "white shirt officer" was an Asian-American male.

47. Plaintiff, who does not recall ever being in the ambulance, arrived at Metropolitan Hospital ("Metropolitan") between 3:30 p.m. and 4:00 p.m.

48. Two officers, both Hospital Defendants, from the 23rd Precinct accompanied Plaintiff into Metropolitan and handcuffed him to a chair with blood coming from his left ear, bleeding, bruised, and cut wrists, and bruises all over his body. Upon information and belief, one of these officers was Defendant Officer Pagan.

49. Plaintiff asked these Hospital Defendants several times if he could clean himself off in the bathroom, but they ignored him. Plaintiff also informed these Hospital Defendants three times over the course of almost five hours that his wrists hurt and showed them the obvious cuts and bruises on both wrists, but they ignored those complaints as well.

50. Before a nurse came to see Plaintiff, one of the Hospital Defendants told Plaintiff that his injuries resulted from being beaten by the man with the baseball bat that, upon information and belief, Plaintiff had encountered prior to the Incident.

51. Due to the extreme nature of his injuries, Plaintiff has little independent recollection of their origin. Because he innocently believed at the time that the Hospital Defendants would have no reason to lie to him about the cause of his injuries, Plaintiff relayed the Hospital Defendants' untruthful explanation for his injuries to the nurse at Metropolitan. The Hospital Defendants were both present but did not speak up and correct him.

52. In reality, however, unbeknownst to Plaintiff at the time and as confirmed by multiple eyewitnesses, Plaintiff's injuries were caused by the Participating Defendants, not a

man with a baseball bat. Indeed, Plaintiff exhibited no injuries when he sought assistance from Defendant John Doe #1.

53. After tests at Metropolitan revealed that Plaintiff suffered a fractured skull and ruptured left eardrum, a doctor recommended a transfer to Bellevue Hospital ("Bellevue") because Metropolitan does not have a neurology department.

54. Realizing that he had been handcuffed to a chair for at least five hours in a hospital without a neurology department and surrounded by officers who would not let him wash the dried blood off his body, Plaintiff saw that a transfer to Bellevue under police supervision would likely be futile. Accordingly, he "refused medical treatment," opting to wait it out at the 23rd Precinct and go to the hospital on his own after his arraignment.

55. Plaintiff was transported from the 23rd Precinct to Central Booking the following morning to be arraigned. Upon seeing Plaintiff, the EMT at Central Booking asked, "How are you standing?" The EMT ordered the police officers to take Plaintiff to Bellevue. Upon information and belief, one of these officers was Defendant Officer Pagan.

56. Relying on one of the Hospital Defendants' false story, Plaintiff told the nurse at Bellevue that his injuries were caused by a man with a baseball bat. Once again, none of the police officers spoke up and admitted the true source of Plaintiff's injuries.

57. The medical personnel at Bellevue confirmed that Plaintiff had a fractured skull and "tympanic trauma."

58. Plaintiff was later charged with resisting arrest and breaking a window earlier that day. He was not convicted of these charges and, upon information and belief, the charges have been dropped.

59. Plaintiff was a college student at the time of the Incident.

60. During the fall semester, just after the Incident, Plaintiff took four classes. He did not complete three of the classes and failed his remaining class.

61. Eighteen months later, Plaintiff still suffers from pain in his wrists, constantly shaking/tremulous hands, constant ringing in his ear, and pressure leading to daily headaches.

62. Plaintiff has a Traumatic Brain Injury, according to recent testing. Whether he has lost cognitive functioning is yet to be determined.

63. Plaintiff is set to undergo more neurological and auditory tests to determine the full extent of the damage.

**FIRST CLAIM FOR RELIEF**
**(For Excessive Police Force in Violation of 42 U.S.C. §1983**
**as against the Individual Defendants)**

64. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 63, inclusive, as though fully set forth herein.

65. Plaintiff has the right, pursuant to the United States Constitution and the Fourth and Fourteenth Amendments thereto, to be free from brutal police conduct and the application of undue or excessive force during the course of an arrest (and after the arrest) by those acting under color of state law.

66. The Participating Defendants violated Plaintiff's constitutional rights when they punched, kicked, and even stood on Plaintiff while he was handcuffed and lying face-first on the concrete sidewalk, after which one Incident Defendant lifted Plaintiff from the ground by the handcuffs.

67. The Hospital Defendants violated Plaintiff's constitutional rights when, at the hospital, they ignored Plaintiff's requests to loosen his handcuffs even after he communicated that he was in pain and showed them his injured wrists.

68. The Individual Defendants took these aforementioned actions against Plaintiff while acting under color of state law, during the course, and within the scope, of their employment by Defendant City of New York.

69. The actions of the Individual Defendants caused Plaintiff to sustain the serious injuries set forth above, along with diminished future wages and past and future medical expenses.

70. The actions taken by the Individual Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### (For Failure to Protect/Intervene in Violation of 42 U.S.C. §1983 as against the Incident Defendants)

71. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 70, inclusive, as though fully set forth herein.

72. Pursuant to the United States Constitution and the Fourth and Fourteenth Amendments thereto, police officers have an affirmative duty to protect the constitutional rights of citizens by intervening during the unlawful use of excessive force by other police officers in their presence.

73. The Incident Defendants violated Plaintiff's constitutional rights when they stood with, or just feet away from, other police officers as they used unlawful excessive force against Plaintiff in their presence, yet did not intervene to protect Plaintiff.

74. The Incident Defendants were standing with, or just feet away, from the lengthy use of excessive force by other police officers and thus had sufficient time, and a realistic opportunity, to intervene on Plaintiff's behalf.

75. The Incident Defendants took these aforementioned (in)actions against Plaintiff while acting under color of state law, during the course, and within the scope, of their employment by Defendant City of New York.

76. The failure of the Incident Defendants to intercede on behalf of Plaintiff during the Incident caused Plaintiff to sustain the serious injuries set forth above, along with diminished future wages and past and future medical expenses.

77. The aforementioned (in)actions taken (or not taken) by the Incident Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (For Municipal Liability as against Defendant City of New York)

78. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 77, inclusive, as though fully set forth herein.

79. The Individual Defendants each violated Plaintiff's rights protected by the United States Constitution by engaging in one or more of the unconstitutional acts set forth below against Plaintiff while acting under color of state law, during the course, and within the scope, of their employment by Defendant City of New York.

80. Defendant City of New York and the NYPD, through its policymakers, servants, and employees, have authorized, sanctioned, ratified, and/or tolerated the Individual Defendants' unconstitutional acts set forth below.

81. Defendant City of New York and the NYPD, through its policymakers, servants, and employees, have displayed a deliberate indifference in failing to properly intercede, train, and supervise its officers to prevent the unconstitutional acts set forth below from happening.

82. The Individual Defendants each took part in one or more of the following unconstitutional customs, practices, procedures, and rules promulgated, or consistently tolerated, by Defendant City of New York and the NYPD:

    a. using excessive force, such as punching and kicking, against arrestees who are already handcuffed;

    b. failing to intervene and protect an arrestee while other police officers are using excessive force in their presence;

    c. failing to report, and discouraging police officers from reporting, the unlawful acts of other police officers; and

    d. abusing handcuffs by (1) picking arrestees up from the ground by the handcuffs; (2) refusing to loosen handcuffs after a detainee complains to officers about pain; and/or (3) refusing to loosen handcuffs when an officer notices that a detainee is cut, bleeding, and/or bruised at the wrists.

83. The duration and frequency of these unconstitutional practices warrant a finding of either constructive or actual notice that these practices have become so widespread and customary among NYPD officers so as to constitute *de facto* policies, such that the need for corrective action or supervision was obvious and policymakers' failure to investigate or rectify the situation evidences a deliberate indifference.

84. Plaintiff's injuries were a direct and proximate result of Defendant City of New York's ratification and/or tolerance of the unconstitutional *de facto* practices set forth above, as well as its failure to properly supervise, train, and discipline its police officers.

85. At this early stage of litigation, Plaintiff has no realistic way to learn about Defendant City of New York's training programs with respect to the policies and procedures involving any of the issues raised above without discovery.

## FOURTH CLAIM FOR RELIEF
**(For Assault as against the Incident Defendants and Defendant City of New York)**

86. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 85, inclusive, as though fully set forth herein.

87. During the Incident, the Incident Defendants, individually, intentionally placed Plaintiff in apprehension of imminent harmful, offensive contact without justification or privilege.

88. The Incident Defendants' actions caused Plaintiff to sustain the serious injuries set forth above, along with diminished future wages and past and future medical expenses.

89. The Incident Defendants took these aforementioned actions against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York.

90. Defendant City of New York is liable for the acts of its agents/employees, including the Incident Defendants, taken against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York under the theory of *respondeat superior*.

91. The aforementioned actions taken by the Incident Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

92. Plaintiff's claim for relief falls within one or more of the exemptions set forth in New York Civil Practice Law and Rules ("CPLR") §1602.

## FIFTH CLAIM FOR RELIEF
### (For Battery as against the Participating Defendants and Defendant City of New York)

93. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 92, inclusive, as though fully set forth herein.

94. During the Incident, the Participating Defendants intentionally initiated wrongful physical contact with Plaintiff without justification or consent.

95. The Participating Defendants' actions caused Plaintiff to sustain the serious injuries set forth above, along with diminished future wages and past and future medical expenses.

96. The Participating Defendants took these aforementioned actions against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York.

97. Defendant City of New York is liable for the acts of its agents/employees, including the Participating Defendants, taken against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York under the theory of *respondeat superior*.

98. The aforementioned actions taken by the Participating Defendants against Plaintiff were willful, wanton, reckless, and/or malicious, and therefore entitle Plaintiff to punitive damages in an amount to be determined at trial.

99. Plaintiff's claim for relief falls within one or more of the exemptions set forth in CPLR §1602.

## SIXTH CLAIM FOR RELIEF
### (For Negligent Use of Excessive Force as against the Participating Defendants)

100. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 99, inclusive, as though fully set forth herein.

101. The Participating Defendants had a duty to Plaintiff to use reasonable force and avoid excessive and unreasonable force when effectuating his arrest.

102. The Participating Defendants had a further duty to use the same degree of care that would reasonably be used by a police officer or other police personnel under similar circumstances.

103. The Participating Defendants breached these duties when they used excessive and unreasonable force when effectuating Plaintiff's arrest and failed to meet the degree of care that would be expected of a reasonable police officer or other police personnel under similar circumstances.

104. The Participating Defendants knew or should have known that their actions were excessive and unreasonable and failed to meet the degree of care that would be used by a reasonable police officer or other police personnel under similar circumstances.

105. The Participating Defendants knew or should have known that their actions would cause injuries to Plaintiff.

106. The Participating Defendants' actions caused Plaintiff to sustain the serious injuries set forth above, along with diminished future wages and past and future medical expenses.

107. The Participating Defendants took these aforementioned actions against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York.

108. Defendant City of New York is liable for the acts of its agents/employees, including the Participating Defendants, taken against Plaintiff during the course, and within the scope, of their employment by Defendant City of New York under the theory of *respondeat superior*.

109. Plaintiff's claim for relief falls within one or more of the exemptions set forth in CPLR §1602.

### SEVENTH CLAIM FOR RELIEF
### (For Negligent Training and Supervision
### as against Defendant City of New York)

110. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 109, as though fully set forth herein, with the exception of any and all allegations that the Individual Defendants acted during the course, and/or within the scope, of their employment by Defendant City of New York (without said exception affecting any or all other allegations in such any or all such paragraph(s)).

111. Defendant City of New York has a duty to train and supervise police officers known to have a propensity for violating NYPD protocol.

112. Defendant City of New York knew or should have known that one or more of the Individual Defendants had a propensity for using excessive force when effectuating an arrest.

113. Defendant City of New York knew or should have known that one or more of the Individual Defendants had a propensity for use of excessive force on a handcuffed civilian.

114. Defendant City of New York knew or should have known that one or more of the Individual Defendants had a propensity for picking up arrestees from the ground by the handcuffs.

115. Defendant City of New York knew or should have known that one or more of the Individual Defendants had a propensity for watching other officers using excessive force without intervening.

116. Defendant City of New York knew or should have known that one or more of the Individual Defendants had a propensity for fabricating stories to cover up misconduct.

117. Defendant City of New York breached its duty to Plaintiff by failing to train and supervise the Individual Defendants who have shown the propensity for the actions described above.

118. Defendant City of New York did not make an effort to comply with its own procedures, internal rules, and policies – whether by investigating the Incident internally, having Internal Affairs investigate, or otherwise – and exercised no judgment or discretion in deciding to retain the Individual Defendants (although the "white shirt officer" personally knew of the Incident).

119. Defendant City of New York's breach(es) caused Plaintiff to sustain the serious injuries set forth above.

## LEGAL AUTHORITY TO INDEMNIFY THE INDIVIDUAL DEFENDANTS

120. Defendant City of New York has the legal authority to indemnify any and all of the Individual Defendants for any and all damages, whether compensatory or punitive, awarded to Plaintiff as determined at trial.

## DEMAND FOR JURY TRIAL

121. Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff Sean Dyson respectfully requests that this Court enter Judgment in his favor and against Defendants as follows:

a. compensatory and punitive damages as against Defendant City of New York and/or one or more of the Individual Defendants, jointly and severally, in a combined amount to be determined at trial, but not less than ten million dollars ($10,000,000.00);

b. attorney's fees incurred during this action, pursuant to 42 U.S.C. §1988(b), the determination of which lies within the sound discretion of this Court;

c. costs incurred during this action, pursuant to 42 U.S.C. §1988(b), the determination of which lies within the sound discretion of this Court;

d. expert fees incurred during this action, pursuant to 42 U.S.C. §1988(c), the determination of which lies within the sound discretion of this Court;

e. all statutory interest on any sums awarded to Plaintiff; and

f. such other and further relief as the Court deems proper and fair.

Dated: New York, New York
February 16, 2011

Respectfully yours,

MARK A. MARINO, PC

_____
Mark A. Marino (MM 0676)
*Attorney for Plaintiff Sean Dyson*
380 Lexington Avenue, 17th Floor
New York, New York 10168
Tel: 212.748.9552

# VERIFICATION

STATE OF NEW YORK )
) ss:
COUNTY OF NEW YORK )

I, SEAN DYSON, hereby affirm, under the penalties of perjury, to the following:

I have read the forgoing Amended Verified Complaint and know the contents thereof and the same is true to my knowledge, except as to the allegations based upon information and belief, and as to those matters, I believe them to be true.

_____
Sean Dyson

Sworn to and subscribed before me
this _12TH_ day of February, 2012.

_____
Notary Public

JOSEPH RUCKEL
NOTARY PUBLIC, State of New York
No. 01RU4826990
Qualified in Queens County
Commission Expires December 31, 2014